IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | | |
|---|---|---|
| MICHAEL W. SULLIVAN, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:13CV00040 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **NINE MILE MINING, INC.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Paul G. Beers and Andrea Hopkins, Glenn, Feldmann, Darby, & Goodlatte, Roanoke, Virginia, and Hugh F. O'Donnell, Client Centered Legal Services of Southwest Virginia, Norton, Virginia, for Plaintiffs; Terry G. Kilgore, Gate City, Virginia, and Dustin M. Deane, James C. Justice Companies, Inc., and Affiliates, Roanoke, Virginia, for Defendant.*

In this class action arising under the Worker Adjustment and Retraining Notification Act (the "WARN Act"), the parties have filed cross motions for summary judgment. For the following reasons, I will grant the plaintiffs' motion and deny the defendant's motion.

I.

The following facts taken from the summary judgment record are undisputed.

Nine Mile Mining, Inc. ("Nine Mile") operated two underground coal mines at a single site in Wise County, Virginia. On May 17, 2013, Nine Mile terminated

seventy-three employees stationed at one of those mines. The employees were given no advance notice.

The members of the class, who were among the miners laid off on that date, allege a violation of the WARN Act and seek back pay and benefits to the extent permitted by 29 U.S.C. § 2104. Resolution of the cross motions for summary judgment turns solely on whether the defendant is a covered employer under the WARN Act. The defendant concedes that if it is a covered employer, then it violated the WARN Act's notice requirement.

The motions have been briefed and orally argued. They are ripe for decision.

## II.

Summary judgment is appropriate when the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Permitting certain narrow exceptions, the WARN Act generally mandates that covered employers provide sixty days' notice in advance of a plant closing or mass layoff. 29 U.S.C. § 2102(a). The Act defines an "employer" as "any

business enterprise that employs — (A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees [including part-time employees] who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)." *Id*. § 2101(a)(1). Coverage under subsection (B) is at issue here,[1] and the plaintiffs bear the burden of proof to establish the defendant's coverage as an employer under the WARN Act. *See Hooper v. Polychrome, Inc*., 916 F. Supp. 1111, 1118 (D. Kan. 1996) ("[P]laintiff bears the burden of proof to show that the threshold requirements for application of the WARN Act have been met."); *Johnson v. TeleSpectrum Worldwide, Inc.*, 61 F. Supp. 2d 116, 121 (D. Del. 1999) ("Plaintiffs have the burden to prove their prima facie case.").

At the center of the dispute is the appropriate method for determining the number of employees Nine Mile had for purposes of coverage. The Department of Labor has provided the following guidance for making a determination of coverage:

> The point in time at which the number of employees is to be measured for the purpose of determining coverage is the date the first notice is required to be given. If this "snapshot" of the number of employees employed on that date is clearly unrepresentative of the ordinary or average employment level, then a more representative number can be used to determine coverage. Examples of unrepresentative employment levels include cases when the level is near the peak or trough of an employment cycle or when large upward or downward shifts in the number of employees occur around the time notice is to

---

[1] The plaintiffs have asserted alternative grounds for coverage, but it is not necessary to consider them.

> be given. A more representative number may be an average number of employees over a recent period of time or the number of employees on an alternative date which is more representative of normal employment levels. *Alternative methods cannot be used to evade the purpose of WARN, and should only be used in unusual circumstances.*

20 C.F.R. § 639.5(a)(2) (emphasis added). Because the layoff occurred on May 17, 2013, the "snapshot" date to determine coverage is March 18, 2013. The plaintiffs utilize the defendant's own Perpetual History Report, an uncontested record of Nine Mile's employment history, and calculate that Nine Mile employed 116 individuals, who worked a total of 8,814 hours, exclusive of overtime, during the two-week pay period ending on March 16, 2013. The same report establishes that Nine Mile employed 118 individuals who worked 9,081 hours, exclusive of overtime, during the following pay period ending on March 30, 2013.

The defendant does not dispute these calculations but contends that the number of employees on and around March 18, 2013, is clearly unrepresentative of Nine Mile's normal employment levels. Pursuant to the above-cited regulation, it advocates for the use of an alternative date to determine the number of employees, namely to the time surrounding the layoff. The regulation proscribes the use of an alternative method of calculation absent "unusual circumstances." 20 C.F.R. § 639.5(a)(2). However, "[t]here is virtually no case law interpreting what constitutes 'unusual circumstances' within the meaning of § 639.5(a)(2), and the cases that exist provide little guidance." *Davis v. Signal Int'l Texas GP, L.L.C.*,

Case 2:13-cv-00040-JPJ-PMS   Document 60   Filed 09/04/14   Page 4 of 9   Pageid#: 934

728 F.3d 482, 491 n.12 (5th Cir. 2013) (affirming the district court's finding of unusual circumstances where there was a complete lack of evidence as to the number of employees on the normal "snapshot" date).

As evidence that the "snapshot" date is clearly unrepresentative of normal employment levels, the defendant has produced records compiled by the Mine Safety and Health Administration ("MSHA"), which it believes "demonstrate a 'peak' employment level of Nine Mile in early 2013. . . . indicat[ing] that prior to early 2013, Nine Mile had never even come close to the 100 employee threshold during any prior quarter tracked by MSHA." (Def.'s Reply Br. Supp. Mot. Summ. J. 6, ECF No. 47.) The defendant contends that a representative "snapshot" date is May 10, 2013, immediately before the layoff, when the MSHA record indicates it employed eighty-six individuals. (*See* Def.'s Mem. Opp'n Pls.' Mot. Summ. J., Ex. D, ECF No. 45-4.)

However, the MSHA record is insufficient to create a genuine dispute as to whether March 18, 2013, is clearly unrepresentative of normal employment levels, so as to make it an inappropriate "snapshot" date. Neither the record's method of calculation nor its data set is explained, and the information in the document is very limited. That record lists only two dates prior to the "snapshot" date: December 1, 2012, when Nine Mile employed eighty-three people, and January 2, 2013, when Nine Mile employed seventy-two people.

Even accepting its accuracy, the numbers contained in that record do not demonstrate that the employment level exceeding 100 employees on March 18, 2013, was "near the peak or trough of an employment cycle," nor was it a "large upward or downward shift[ ]" in employment levels. 20 C.F.R. § 639.5(a)(2). It shows that 111 workers were employed by the defendant on April 1, 2013, and while the lowest employment recorded was twenty-three individuals as a result of the layoff at issue, by December 31, 2013, the defendant once again employed ninety individuals. (*See* Def.'s Mem. Opp'n Pls.' Mot. Summ. J., Ex. D, ECF No. 45-4.) In fact, for every quarter of 2013, a more detailed MSHA record establishes that Nine Mile employed over ninety people at the two mines. (*See* Def.'s Mem. Opp'n Pls.' Mot. Summ. J., Ex. F, ECF No. 45-6.) Stephen W. Ball, the Senior Vice President for Nine Mile and related entities, confirmed as much when he agreed that, "[a]t the most," Nine Mile would normally employ approximately ninety-five individuals. (Pls.' Br. Supp. Summ. J., Ex. 5 at 19, ECF No. 38-6.)

In *Saxion v. Titan-C-Manufacturing, Inc.*, 86 F.3d 553 (6th Cir. 1996), the employer asserted a similar argument without success. In the district court, the employer "presented a chart showing that over a one-year period the number of full-time employees had fluctuated from a low of 51 to a high of 117, with an average of 82." *Id.* at 557. The district court discounted this evidence, because the individual who had prepared the chart "had not included employees on sick-leave,

Case 2:13-cv-00040-JPJ-PMS   Document 60   Filed 09/04/14   Page 6 of 9   Pageid#: 936

vacation, suspension, or temporary layoff," and employer records suggested that at least one employment figure was actually 50 percent higher. *Id.* Moreover, "[t]he plaintiffs presented evidence, based on payroll records [and other testimony], that the company employed 121 employees on January 5, 1990, and 143 employees between January 23 and March 13," which was close in time to when notice was required and when the plant was closed, respectively. *Id.* The Sixth Circuit found that the trial court's determination in favor of coverage was not clearly erroneous. Similarly, in the instant case, there are unanswered questions about the methodology, the data set, and the preparation of the MSHA record, and given the clear evidence favoring coverage at and around the "snapshot" date, the MSHA record is unpersuasive.

The defendant also attempts to avoid coverage "by taking a perpetual history report that captured all pay checks issued for work performed from March 18, 2012 through March 18, 2013 and dividing the aggregate non-overtime hours for that period (164,140.25) by 52 weeks." (Def.'s Mem. Supp. Mot. Summ. J. 5, ECF No. 40 (footnote omitted).) The resulting number of hours worked in the aggregate is 3,156.5 hours per week, below the required threshold. However, the "snapshot" regulation only counsels that "a more representative number" may be derived from "a recent period of time" or "an alternative date." 20 C.F.R. § 639.5(a)(2). As discussed, the defendant has not demonstrated that the "snapshot" date was clearly

unrepresentative, and it points to no authority supporting such an expansive calculation of aggregate hours. Indeed, in *Hollowell v. Orleans Regional Hospital LLC*, 217 F.3d 379 (5th Cir. 2000), which the defendant has acknowledged as contrary persuasive authority, the Fifth Circuit utilized the two-week pay period capturing the "snapshot" day to determine aggregate hours.

In summary, there is no genuine factual dispute but that the defendant employed 100 or more individuals on March 18, 2013, who worked more than 4,000 hours per week in the aggregate. The defendant has not demonstrated that this "snapshot" date is clearly unrepresentative so as to require use of an alternative method of calculation. Accordingly, I find as a matter of law that Nine Mile qualifies as an "employer" under the WARN Act.

### III.

For the reasons stated, the plaintiffs' Motion for Summary Judgment (ECF No. 37) is GRANTED, and the defendant's Motion for Summary Judgment (ECF No. 39) is DENIED.

At oral argument, counsel for the parties jointly assured me that they believed that in the event that I found for the plaintiffs on the coverage issue, they could agree as to the amount of recovery due to the class members. I will allow the parties twenty-one days to formulate such an agreement and advise the court. If

unsuccessful within that time, I will set the case for trial before a jury as to the issue of damages.[2]

It is so **ORDERED**.

ENTER: September 4, 2014

/s/  James P. Jones
United States District Judge

---

[2] Of course, any agreement must be approved by the court after notice to the class and hearing.  Fed. R. Civ.  P. 23(e).